UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) ) No. 04 CR 531 |
| v. | ) ) Judge John Robert Blakey |
| SIDNEY UPCHURCH, | ) ) |
| Defendant. | ) |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR REDUCTION OF SENTENCE**

The UNITED STATES OF AMERICA, by its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, hereby provides its response in opposition to defendant Sidney Upchurch's motion for release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). As detailed below, defendant's motion should be denied because he has not established that extraordinary and compelling reasons justify his release under 18 U.S.C. § 3582(c)(1)(A)(i). Accordingly, the government requests that defendant's motion be denied.

**BACKGROUND**

*Offense and Procedural History*

On May 27, 2004, a grand jury returned a multi-count indictment charging defendant Sidney Upchurch with Hobbs Act conspiracy, and a number of substantive Hobbs Act and firearms offenses. Dkt. 1.

On January 6, 2005, a superseding indictment was returned, charging defendant with Hobbs Act conspiracy, in violation of 18 U.S.C. § 1951(a) (Count 1);

use of a firearm during a violent crime, in violation of 18 U.S.C. § 924(c) (Counts 3, 6, 9, 11, 13, 15, 17, 19, 21, 23, and 25); and committing a robbery that affected interstate commerce, in violation of 18 U.S.C. § 1951 (Counts 2, 4, 5, 7, 8, 10, 12, 14, 16, 18, 20, 22, 24, and 26). Dkt. 110.

On January 21, 2005 defendant entered a guilty plea, by a plea agreement with the government, to Counts 1, 2, 3, 8, 12, 18, 22, and 24 of the superseding indictment. Dkt. 121. As described in the plea agreement, the offense conduct consisted of a string of armed robberies of credit unions, currency exchanges, grocery stores, and other commercial establishments that were planned and carried out by defendant and others. Defendant's role included obtaining intelligence on targeted establishment, their employees, and the employee's family members before committing robberies. In most instances, defendant selected targets and created the plan of robbery. During certain robberies, co-conspirators brandished firearms, pointed firearms at employees, and/or bound and threatened employees.

On May 25, 2006, the district court imposed a sentence of 240 months' imprisonment for Counts 1, 2, 8, 12, 18, 22, and 24, and a sentence of 84 months' imprisonment for Count 3 to run consecutively to the sentence for Counts 1, 2, 8, 12, 18, 22, and 24. Dkt. 283.

Defendant is currently serving his sentence at FCI Allenwood Medium; according to the Bureau of Prisons, defendant's projected release date is March 3, 2027.

On April 30, 2020, defendant submitted to the warden of FCI Allenwood Medium a letter from defendant requesting a reduction in sentence or transfer to home confinement in light of concerns related to COVID-19. Ex. 1. On May 13, 2020, the warden of FCI Allenwood Medium denied that request. Ex. 2.

### *The BOP's Response to COVID-19*

As reported on the BOP's website, in January 2020, the BOP began a course of action to respond to the spread of COVID-19.[1] Phase One of this course of action included the creation of an agency task force working in conjunction with subject matter experts from the Center for Disease Control and Prevention ("CDC") and the World Health Organization to review guidance about best practices to mitigate transmission. *Id.* On March 13, 2020, as part of Phase Two of the course of action, the BOP began implementing various measures to mitigate the spread of the virus. These measures included suspending social visits, in-person legal visits, all inmate movement, and staff travel. The BOP also began implementing procedures to quarantine and screen inmates and staff for the virus, which included screening all newly arriving inmates for exposure risk factors and symptoms, quarantining asymptomatic inmates with exposure risk factors, and isolating and testing symptomatic inmates with exposure risk factors. *Id.*

Subsequent phases of the BOP's response included the authorization of inmate movement in order to avoid overcrowding at BOP facilities. However, such

---

[1] Federal Bureau of Prisons COVID-19 Action Plan, March 13, 2020, https://www.bop.gov/resources/news/20200313_covid-19.jsp (last visited December 5, 2020).

movements were limited to inmates who had been in custody for more than fourteen days and who had been subjected to exit screening to ensure that the prisoner had no COVID-19 symptoms (fever, cough, shortness of breath) and a temperature less than 100.4 F.[2] Subsequent phases of the course of action included the quarantine and isolation of all new inmates with asymptomatic inmates being quarantined for fourteen days and symptomatic inmates being isolated until testing negative for COVID-19, modifying operations to maximize social distancing, the maximization of telework for staff members, and conducting inventory reviews of all cleaning and medical supplies to ensure ample supplies were on hand and ready to be distributed as necessary at BOP facilities.[3]

On April 1, 2020, as part of Phase 5 of its COVID-19 action plan, the BOP secured all inmates to their assigned cells or quarters to decrease the spread of the virus.[4] On April 13, 2020, as part of Phase 6 of its COVID-19 action plan, the BOP continued to secure all inmates to their assigned cells or quarters to decrease the

---

[2] Updates to BOP COVID-19 Action Plan, March 19, 2020, https://www.bop.gov/resources/news/20200319_covid19_update.jsp (last visited December 5, 2020).

[3] Bureau of Prisons Update on COVID-19, March 24, 2020, https://www.bop.gov/resources/news/pdfs/20200324_bop_press_release_covid19_update.pdf (last visited December 5, 2020).

[4] COVID-19 Action Plan: Phase Five, March 31, 2020, https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp (last visited December 5, 2020).

spread of the virus.[5] Thereafter, on May 18, 2020, the BOP extended the implementation of Phase 7 of its COVID-19 plan until June 30, 2020.[6] Phase 7 extends all measures from Phase 6, including measures to contain movement and decrease the spread of the virus.

On August 5, 2020, the BOP announced Phase 9 of its COVID-19 plan, which extended its previous safety measures through and including August 31, 2020.[7] The BOP recently announced that non-contact, socially distanced, in-person social visitations would re-commence at certain BOP facilities.[8] On September 2, 2020, the BOP announced that non-contact, socially distanced in-person social visitations would re-commence at certain BOP facilities.[9] Phase 9 continues to be in effect, with modifications as updated on November 25, 2020, including the continuation of non-

---

[5] COVID-19 Action Plan: Phase Six, April 13, 2020, https://www.bop.gov/resources/news/pdfs/20200414_press_release_action_plan_6.pdf (last visited December 5, 2020).

[6] Bureau of Prisons COVID-19 Action Plan: Phase Seven, May 20 2020, https://www.bop.gov/resources/news/20200520_covid-19_phase_seven.jsp (last visited December 5, 2020).

[7] Federal Bureau of Prisons, "Coronavirus (COVID-19) Phase Nine Action Plan," August 5, 2020, https://prisonology.com/wp-content/uploads/2020/08/COVID-19-Phase-9-COVID-Action-Plan.pdf (last visited December 5, 2020).

[8] Federal Bureau of Prisons, "Bureau to Resume Social Visitation," September 30, 2020, https://www.bop.gov/resources/news/20200902_visitation.jsp (last visited December 5, 2020).

[9] Bureau to Resume Social Visitation, September 30, 2020, https://www.bop.gov/resources/news/20200902_visitation.jsp#:~:text=(BOP)%20%2D%20The%20BOP%20recognizes,inmates%20were%20afforded%20500%20(vs. (last visited on December 3, 2020).

contact, socially distanced in-person visitations, where possible while maintaining the safety of BOP staff, inmates, visitors, and communities.[10]

Further details and updates of the BOP's modified operations are available to the public on the agency's website at a regularly-updated resource page: www.bop.gov/coronavirus/index.jsp (last visited December 5, 2020).

## ARGUMENT

### I. The Defendant Is Ineligible for Relief Under 18 U.S.C. § 3582(c)(1).

The defendant's motion is ripe for adjudication by this court because defendant has complied with the First Step Act's requirement that a defendant exhaust administrative remedies before seeking a compassionate release reduction in sentence from the court. Nevertheless, the court should deny defendant's motion because defendant has not established that extraordinary and compelling reasons justify his requested reduction in sentence.

#### A. Legal Standard

As amended by Section 603(b) of the First Step Act of 2018, Pub. L. 115-391, Title 18, United States Code, Section 3582(c)(1)(A) provides:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the

---

[10] BOP Modified Operations, Updated November 25, 2020, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited on December 3, 2020).

6

>factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>>(i) extraordinary and compelling reasons warrant such a reduction; or
>
>>(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Direct of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
>and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Under this statute, in addition to finding "extraordinary and compelling" reasons for the reduction, the Court must find that a sentence reduction is consistent with applicable policy statements issued by the U.S. Sentencing Commission and the sentencing factors set forth in 18 U.S.C. § 3553(a).

**B.  Defendant Has Complied with Section 3582(c)(1)'s Exhaustion Requirement.**

According to 18 U.S.C. § 3582(c)(1), a defendant is free to bring a motion for compassionate release after he has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf, or 30 days have elapsed since the receipt of such a request by the warden of the defendant's facility, whichever is earlier.

On April 30, 2020, defendant submitted a request for a compassionate release reduction in sentence to the warden of FCI Allenwood Medium. Ex. 1. On May 13,

2020, the warden denied defendant's request. Ex. 2. Because more than 30 days have elapsed since defendant submitted his request for a reduction in sentence, defendant has satisfied the statutory exhaustion requirement set forth in § 3582(c)(1)(A).

      **C.    Defendant Has Not Established That "Extraordinary and Compelling Reasons" Warrant a Sentence Reduction.**

Defendant seeks release pursuant to § 3582(c)(1)(A), which allows for such relief where, "after considering the factors set forth in section 3553(a) . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

Pursuant to Congress's directive, prior to the enactment of the First Step Act, the Sentencing Commission promulgated USSG § 1B1.13, which sets forth the Sentencing Commission's policy statement with respect to § 3582(c)(1)(A). Consistent with § 3852(c)(1)(A)(i), § 1B1.13 provides that a court may reduce a term of imprisonment, after considering the § 3553(a) factors, if three criteria are satisfied: (1) "extraordinary and compelling reasons warrant the reduction"; (2) "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (3) the reduction is consistent with the factors set forth in 18 U.S.C. § 3553, to the extent relevant. U.S.S.G. § 1B1.13.

As Congress expressly directed, the Sentencing Commission issued policy statements defining the "extraordinary and compelling reasons" that might warrant a sentence reduction under § 3582(c)(1)(A)(i). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing

8

modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."). *United States v. Saldana*, 807 F. App'x. 816, 819 (10th Cir. 2020).

Application Note 1 to Guideline § 1B1.13 limited the "extraordinary and compelling reasons" for which a sentence reduction is appropriate to the following particular circumstances:

> 1. The defendant suffered from a "terminal illness" or his physical or mental condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13 cmt. n.1(A).
>
> 2. The defendant was at least 65 years old, experiencing a serious deterioration in physical or mental health because of the aging process, and served the lesser of 10 years or 75% of his sentence. *Id.* § 1B1.13 cmt. n.1(B).
>
> 3. The defendant's family circumstances include either the death or incapacitation of the caregiver of the defendant's minor child or minor children or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner. *Id.* § 1B1.13 cmt. n.1(C).
>
> 4. "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13 cmt. n.1(D).

Guideline § 1B1.13, cmt. n. 1.

In *United States v. Gunn*, No. 20-1959, ___ F.3d ___, 2020 WL 6813995 (7th Cir. 2020), the Seventh Circuit recently held that, because Guideline § 1B1.13 has

not been amended following the enactment of the First Step Act, "the Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release." *Id*. at *2. Therefore, *Gunn* held, district courts are free to consider motions for a sentence reduction on grounds other than the categories of extraordinary and compelling reasons listed in Guideline § 1B1.13, as limited by the statute itself. However, the Court pointed out that

> [t]he substantive aspects of the Sentencing Commission's analysis in §1B1.13 and its Application Notes provide a working definition of "extraordinary and compelling reasons"; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused.

Therefore, Guideline § 1B1.13 remains instructive (although according to *Gunn* not exhaustive) in determining the meaning of the term "extraordinary and compelling reasons" for purposes of § 3582(c)(1)(A)(i).[11]

Defendant argues that his underlying medical conditions render him particularly susceptible to illness associated with COVID-19 and that this constitutes an extraordinary and compelling reason that warrants a reduction in sentence. Mot. at 8-12. In support of this argument, defendant cites his diagnoses of hypertension,

---

[11] The government argued in *Gunn* and in numerous other cases that Guideline § 1B1.13 is binding on the district court in the context of motions for compassionate release filed by the defendant, and that the court lacks authority to grant relief under the statute on bases other than those enumerated in the application notes that accompany § 1B1.13. This argument is now foreclosed by *Gunn*. The government preserves for potential further review the argument that *Gunn* was wrongly decided, and that a sentence reduction may be granted under § 3582(c)(1)(A)(i) only where the defendant has established an extraordinary and compelling reason, as defined by Application Notes 1(A) through 1(C) to Guideline § 1B1.13.

10

prediabetes, chronic kidney disease, and Vitamin D deficiency.[12] *Id*. According to the website of the Centers for Disease Control ("CDC"), persons of any age who have chronic kidney disease are at increased risk for severe illness associated with COVID-19.[13] Current guidance from the Centers for Disease Control ("CDC") does not identify hypertension as a medical condition that increases the risk of severe illness from COVID-19. Instead, the guidance states that, "[b]ased on what we know at this time," people with hypertension "might be at an increased risk for severe illness from COVID-19."[14] The guidance advises that persons with Type 2 diabetes are at increased risk of severe illness from COVID-19; "prediabetes" indicates that defendant is at risk of developing diabetes in the future; it is not a current diagnosis of diabetes, and it is not itself identified in the guidance as a condition that increases COVID-19 risk. The guidance makes no mention of Vitamin D deficiency as a condition that increases the risk of severe illness from COVID-19.

In light of the COVID-19 pandemic, and the fact that, as confirmed by BOP records, defendant presents with a medical condition identified by the CDC as a COVID-19 risk factor, the government agrees that defendant has established that he

---

[12] Defendant's medical records—attached hereto as Exhibit 3 and filed under seal pursuant to the Court's order (Dkt. 390)—corroborate defendant's claim to these diagnoses.

[13] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#chronic-kidney-disease (chronic kidney disease).

[14] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#heart-conditions (hypertension).

11

suffers from "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I), in that chronic kidney disease substantially diminishes defendant's ability to provide self-care against serious injury or death as a result of COVID-19.[15]

But this showing does not automatically entitle defendant to relief under 18 U.S.C. § 3582(c)(1). Pursuant to the statute, the Court must also consider whether defendant poses a danger to the community, as well as all other pertinent § 3553(a) factors, including defendant's history and characteristics, the risk of recidivism he poses, the time remaining on his sentence, the quality of his release plan, and the impact of the Bureau of Prisons' efforts to maintain the safety of inmates.

Here, defendant's offense conduct consisted of his acting as a leader/organizer in planning and executing a series of many violent robberies of businesses, which

---

[15] Defendant also argues that his fear of being exposed to, or contracting, COVID 19, while incarcerated also constitutes an extraordinary and compelling reason warranting release. Dkt. 388 at 6-7. While the government recognizes inmates' legitimate concern regarding the risk of infection, that concern does not amount to an extraordinary and compelling reason for release, especially when evaluated against the statute and Guideline § 1B1.13 and its accompanying application notes. Neither supports the notion that a generalized fear of future illness, even during a pandemic, constitutes an "extraordinary and compelling reason" warranting relief. As multiple judges in the Northern District of Illinois and courts across the country have held, neither the COVID-19 pandemic generally, nor the presence of the disease in a particular correctional facility, in and of itself constitutes "extraordinary and compelling reasons" under § 3582(c)(1). *See United States v. Shannon*, No. 13 CR 535, 2020, at *1, 2020 WL 3489491, at *2 (N.D. Ill. June 26, 2020); *accord, United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.").

involved use of firearms, and binding and threatening the victim-employees of the robbery targets.

With respect to defendant's health, defendant makes no claim that his illnesses cannot be treated or controlled by medical personnel at FCI Allenwood Medium, or that he has been exposed to inmates or staff members who have tested positive for the virus, or even exhibited symptoms. To the contrary, defendant's medical records reflect that his health is generally stable, and that he is receiving appropriate medical care. While FCI Allenwood Medium, the facility where defendant is housed, previously suffered from a COVID-19 outbreak, according to BOP reports, Allenwood Medium currently has only 45 inmates (of approximately 1,000) inmates and nine staff members who have tested positive for COVID-19, and 226 inmates and 12 staff members who have recovered from the virus. These numbers indicate that the efforts of BOP personnel to quell the virus are having a positive impact. *See* https://www.bop.gov/coronavirus/ (last visited December 5, 2020).

After considering the relevant factors set forth in § 3553(a)—including the serious nature of the violent crimes defendant committed—the Court determined that a total sentence of 324 months' imprisonment was sufficient but not greater than necessary to accomplish the statutory purposes of sentencing. In crafting that sentence, the court would have considered both the serious of the offense as well as defendant's criminal history, which was concerning.[16] To date, defendant has served

---

[16] According to the plea agreement, defendant had a total of 9 criminal history points, resulting from a 1991 conviction for manufacture or delivery of a controlled substance (17 years imprisonment, 3 points), a second 1991 conviction for burglary (3 years' imprisonment,

13

only approximately 60 percent of that sentence. In light of these considerations, a grant of relief at this time would deprecate the seriousness of defendant's offenses and undermine the sentence's purposes of deterrence and protection of the public.

## CONCLUSION

For the reasons set forth above, defendant's motion should be denied.

        Respectfully submitted,

        JOHN R. LAUSCH, JR.
        United States Attorney

        By: s/ Michael J. Kelly
           MICHAEL J. KELLY
           Assistant United States Attorney
           219 South Dearborn Street
           Chicago, Illinois 60604
           (312) 353-4220
           michael.kelly@usdoj.gov

Date: December 7, 2020

---

3 points), and a 1988 conviction for burglary (5 years' imprisonment, 3 points). Dkt. 121 at 26-27.