In the United States District Court

For The Northern District of Illinois

Eastern Division

Case No. 04-CR-531-DHC

United States of America,

      Plaintiff/Respondent,

**F I L E D**

**JUN 02 2022**

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Vs.

Sidney Upchurch, pro-se

      Defendant/Petitioner,

_____/

### *Motion for Compassionate Release pursuant to the FSA and 18 U.S.C. 3582(c)(2). Based on New Developments.*

Comes Now, the defendant/Petitioner, Sidney Upchurch, pro-se, interposing *Haines v. Kerner* 404 US 519 (1974) and 18 USC 3582(c)(2), the FSA and Cares Act, who respectfully moves this Honorable Court for compassionate release base upon new developments in the declining health of his father Sidney Parker Jr. In support thereof, Mr. Upchurch avers as follows:

**Jurisdiction**:

This court's jurisdiction is vested upon 18 USC 3582(c)(2), The First Step Act of 2018, and the CARES ACT. Section 3582(c)(1)(A) of title 18 of the United States Code (commonly referred to as the

1

"compassionate release" provision) authorizes a court to reduce a defendant's term of imprisonment for "extraordinary and compelling reasons." The First Step Act of 2018 (the "First Step Act" or "Act") amended section 3582(c)(1)(A) to allow a defendant to file a motion seeking compassionate release directly in federal court after satisfying an administrative exhaustion requirement. Before the First Step Act, the statute permitted only the Director of the Federal Bureau of Prisons ("BOP") to file that motion on the defendant's behalf

### THIS COURT HAS AUTHORITY TO RESENTENCE MR. UPCHURCH UNDER 18 U.S.C. 3582(c)(I)(A) For THE EXTRAORDINARY AND COMPELLING REASONS PRESENTED HERE

With the changes made to the compassionate release statute by the First Step Act, courts need not await a motion from the Director of BOP to resentence prisoners to time Filed: for "extraordinary and compelling reasons," and the reasons that can justify resentencing need not involve only medical, elderly, or *family circumstances*. It is family circumstances which petitioner is relying on.

A. When Congress originally enacted 3582 in 1984, it intended for district courts to reduce sentences for prisoners on the basis of extraordinary and compelling reasons not limited to medical, family, or elderly circumstance.

Congress first enacted the modern form of the compassionate release statute contained in I8 U.S.C. 3582 as part of the Comprehensive Crime Control Act of 1984. Section 3582(c) states that a district court can modify even a final "term of imprisonment" in four situations, the broadest of which is directly relevant here. A sentencing court can reduce a sentence if and whenever "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. 3582(c)(I)(A).

In 1984, Congress conditioned the reduction of sentences on the BOP Director filing an initial motion in the sentencing court; absent such a motion, sentencing courts had no authority to modify a prisoner's

2

sentence for extraordinary and compelling reasons. Id Congress never defined what constitutes an "extraordinary and compelling reason" for resentencing under 3582(c).

But the legislative history gives an indication of how Congress thought the statute should be employed by federal courts. One of Congress's initial goals in, passing the Comprehensive Crime Control Act was to abolish federal parole and create a "completely restructured guideline sentencing system." S. Rep No. 98-225, at 52, 53 n.l4 (1983). Yet, recognizing that parole historically played a key role in responding to changed circumstances, the Senate Committee stressed how some individual cases may still warrant a second look at resentencing:  The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term of imprisonment. Id. At 55-56 (emphasis added). Rather than having the Parole Commission review every federal sentence focused only on an offender's rehabilitation, Congress decided that  3582(c) could and would enable courts to decide, in individual cases, if "there is a justification for reducing a term of imprisonment." Id. at 56. Congress intended for the situations listed in 3582(c) to act as "safety valves for modification of sentences," id. at 121, that enabled sentence reductions when justified by various factors that previously could have been addressed through the (now abolished) parole system. This particular safety valve would "assure the availability of specific review and reduction to a term of imprisonment for 'extraordinary and compelling reasons' and [would allow courts] to respond to the changes in the guidelines." Id. Noting that this approach would keep "the sentencing power in the judiciary where it belongs," rather than with a federal parole board, the statute premised "later review of sentences in particularly compelling situations." Id. (emphasis added).

3

Congress thus intended to give federal sentencing courts an equitable power that would be employed on an individual basis to correct fundamentally unfair sentences. And there is no indication that Congress limited the safety valve of $ 35S2(c)(l)(A) to medical or elderly release; if extraordinary and compelling circumstances were present, they could be used to "justify a reduction of an unusually long sentence." S. Rep No. 98-225, at 55-56. B. The U.S. Sentencing Commission concluded that 3582(c)(f)(A)'s "extraordinary and compelling reasons" for compassionate release are not limited to medical, elderly, or family circumstances.

Congress initially delegated the responsibility for determining what constitutes "extraordinary and compelling reasons" to the U.S. Sentencing Commission ("Commission"). See 28 U.S.C. 994(t) ("The Commission...shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.") Congress provided only one limitation to that delegation of authority: "rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. 994(t) (emphasis added). Congress no doubt limited the ability of rehabilitation alone to constitute extraordinary circumstances so that sentencing courts could not use it as full and direct substitute for the abolished parole system. Congress, however, contemplated that rehabilitation could be considered with other extraordinary and compelling reasons sufficient to resentence people in individual cases. Indeed, the use of the modifier alone" signifies just the opposite: that rehabilitation could be used in tandem with other factors to justify reduction. The Commission initially neglected its duty, leaving the BOP to fill the void and create the standards for extraordinary and compelling reasons warranting resentencing under 3582(c)(1)(A).

The Commission finally acted in 2007, promulgating a policy ' BOP promulgated policies governing compassionate release. The latest version prior to the passage of the First Step Act was Program Statement 5050.49, Compassionate Release/Reduction in Sentences (Mar.25, 2010) that extraordinary and compelling reasons includes medical conditions, age, family circumstances, and "other reasons."

U.S.S.G 1Bl.13, application note I(A). After a negative DOJ Inspector General report found that the BOP rarely moved courts for a 3582(c)(l)(A) modification even for prisoners who met the objective criteria, see U.S. Dept. of Justice Office of the Inspector General, The Federal Bureau of Prisons' Compassionate Release Program (Apr. 2013) ("FBOP Compassionate Release program"), the Commission amended its policy statement, expanding the guidance to courts on qualifying conditions and admonishing the BOP to file motions for compassionate release whenever a prisoner was found to meet the objective criteria in U.S.S.G 1Bl.13. Id. at application note 4; see also *United States v. Dimasi*, 220 F. Supp. 173, 175 (D. Mass. 2016) (discussing the progression from the OIG report to "encouraging" guidelines). The Commission created several categories of qualifying reasons: (A) "Medical Conditions of the Defendant," including terminal illness and other serious impairments; (B) "Age of the Defendant," for those 65 and older with serious deterioration related to aging who have completed at least 10 years or 75 percent of the term of imprisonment; (C) *"Family Circumstances,"* where a child's caregiver or spouse dies or becomes incapacitated without an alternative caregiver; and (D) "Other Reasons," when the Director of BOP determines there is "an extraordinary and compelling reason other than, or in combination with, the reason described in subsections (A) through (C)." Id., application note I (A). The Commission also clarified that the extraordinary and compelling reasons need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G lBl.13, application note 2.

In other words, even if an "extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court, [that fact] does not preclude consideration for a [sentence] reduction." Id. Consistent with the text and legislative history of 3582 (c), the Commission concluded that reasons beyond medical, "extraordinary and compelling reasons" compelling reasons need not be based initial sentencing of the defendant. age, and *family*

*circumstances* could qualify as for resentencing, and that the extraordinary or on changed

circumstances occurring.

see *United States v. Reyes* 2020 WL 1663129, at *3 (N.D. Ill. Apr. 3, 2020) (Further, Reyes
attached a letter from an aunt who has stage four cancer and who notes that managing her care
has been difficult for the Reyes family. She writes that "[Reyes's] help is desperately needed."
(Id.) The policy statement's third condition mentions only a spouse or dependent children, but
the Court again notes that the "other" condition is meant to give discretion and especially
recognize non-traditional family arrangements and the need for others in the family to contribute
when a relative is sick. Thus, Reyes's family circumstances contribute to allowing the Court to
make a finding that extraordinary and compelling circumstances exist. Finally, although
rehabilitation alone cannot be an extraordinary and compelling circumstance, see 28 U.S.C. §
994(t), the Court is entitled to consider rehabilitation and give it appropriate analytical weight.
The Court finds that Reyes has compiled an impressive record of rehabilitation. Through the First
Step Act, Congress changed the process for compassionate release based on criticism of BOP's
inadequate use of its authority, returning to the federal judiciary the authority to act on its own to
reduce sentences for "extraordinary and compelling reasons."

Prior to Congress passing the First Step Act, the process for compassionate release under 3582(c)(1)(A)

was as follows: the U.S. Sentencing Commission set the criteria for resentencing relief under 3582(c), and

the only way a sentencing court could reduce a sentence was if the BOP Director initiated and filed a

motion in the sentencing court. See PL 98-473 (H.J. Res 648), PL 98-473, 98 Stat. 1837(Oct. 12, 1984).

If such a motion was filed, the sentencing court could then decide if "the reduction was justified by

'extraordinary and compelling reasons' and was consistent with applicable policy statements issued by

the Sentencing Commission." Id.

So even if a federal prisoner qualified under the Commission's definition of extraordinary and compelling

reasons, without the BOP director's filing a motion, the sentencing court had no authority to reduce the

sentence, and the prisoner was unable to secure a sentence reduction. This process meant that,

practically, the BOP Director both initiated the process and set the criteria for whatever federal prisoner's

circumstances the Director decided to move upon. Leaving the BOP Director with ultimate authority for

6

triggering and setting the criteria for sentence reductions under 3582(c)(l)(A) created several problems. The Office of the Inspector General found that the BOP failed: to provide adequate guidance to staff on the criteria for compassionate release, to set timelines for reviewing compassionate release requests, to create formal procedures for informing prisoners about compassionate release, and to generate a system for tracking compassionate release requests. See FBOP Compassionate Release Program, at i-iv. As a result of these problems, the OIG concluded that "BOP does not properly manage the compassionate release program, resulting in inmates who may be eligible candidates for release not being considered." Id.; see generally Stephen R. Sadye & Lynn Dieffenbach, Second Look Resentencing Under 3582(c) as an Example of Bureau of Prisons Policies that Result in Over incarceration, 2l FED. SENT. RPTR. 167 (Feb. 2009) Congress heard those complaints.

In late 2018, Congress passed the First Step Act, part of which transformed the process for compassionate release under 3582(c)(l)(A). See P.L. ll5-391, 132 Stat. 5194, at 603 (Dec.21,2018). Section 603 of the First Step Act changed the process by which 3582(c)(l)(A) compassionate release occurs: instead, The Department of Justice has recognized that, prior to the passage of the First Step Act, BOP (and not the Commission) functionally had the final say on what constituted an "extraordinary and compelling reason" for sentence reduction, because only the BOP could bring a motion under the terms of 3582(c)(l)(A). See Dept. of Justice, Letter to U.S. Sentencing Commission Chairman Hinojosa (July 14, 2007) (noting that because Congress gave BOP the power to control which particular cases will be brought to a court's attention, "it would be senseless [for the Commission] to issue policy statements allowing the court to grant such motions on a broader basis than the responsible agency will seek them"). by depending upon the BOP Director to determine an extraordinary circumstance and then move for release, a court can now resentence "upon motion of the defendant," if the defendant has fully exhausted all administrative remedies, "or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." l8 U.S.C. 3582(c)(l)(A). Petitioner has exhausted his administrative remedies.

7

Once a defendant who has properly exhausted files a motion, a court may, after considering the 18 U.S.C. 3553(a) factors, resentencing a defendant, if the court finds that extraordinary and compelling reasons warrant a reduction. Id. The effect of these new changes is to allow federal judges the ability to move on a prisoner's compassionate release application even in the face of BOP opposition or its failure to respond to a prisoner's request for compassionate release in a timely manner.

Congress made these changes in an effort to expand the use of compassionate release sentence reductions under 3582(c)(1)(A). Congress labeled these changes, "In using the Use and Transparency of Compassionate Release." 164 Cong. Rec. H10346, H10358 (2018) (emphasis added). Senator Cardin noted on the record that the First Step Act made several reforms to the federal prison system, including that "[t]he bill expands compassionate release under the Second Chance Act and expedites compassionate release applications." 164 Cong. Rec. H I0346-04, H10362 (Dec. 20, 2018) (emphasis added).

Federal judges now have the power to order reductions of sentences even in the face of BOP resistances or delay in the processing of applications. The legislative history leading up to the enactment of the First Step Act establishes that Congress intended the judiciary not only to take on the role that the BOP once held under the pre-First Step Act compassionate release statue as the essential adjudicator of compassionate release requests, but also to grant sentence reductions on the full array of grounds reasonably encompassed by the "extraordinary and compelling" standard set forth in the applicable statute. D. Statutory text defines judicial sentence reduction authority around "extraordinary and compelling reasons," and the policy statements of the U.S. Sentencing Commission under 1B1.13 do not preclude this court from resentencing Mr. Upchurch. Once a prisoner has properly pursued administrative remedies and filed a motion for compassionate release, a federal court possesses authority to reduce a sentence if and whenever the court finds "extraordinary and compelling reasons warrant such a reduction."

A court must consider the 18 U.S.C. 3553(a) sentencing factors in reducing any sentence, and any reduction of a sentence that a court order must also be consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. 3582(c)(1)(A). As noted above, the Sentencing Commission created a catch-all provision for compassionate release under U.S.S.G. 1Bl.l3, application note (1)(D), which states: Other Reasons. -As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C). The Commission also stated the process by which compassionate release reductions should be decided: Motion by the Director of the Bureau of Prisons. -A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. 3582(c)(1)(A). U.S.S.G. 1B1.13, application note 4.

The dependence on the BOP in these policy statements is a relic of the prior procedure that is now inconsistent with the First Step Act's amendment of 18 U.S.C. 3582(c)(l)(A). Application notes 1(D) can no longer limit judicial authority to cases with an initial determination by the BOP Director that a prisoner's case presents extraordinary or compelling reasons for a reduction, because the First Step Act has expressed allows courts to consider and grant sentence reductions even in the face of an adverse or unresolved BOP determination concerning whether a prisoner's case is extraordinary or compelling. See 18 U.S.C. 3582(c)(1)(A), as amended by P.L. 115-391 Sec. 503 (Dec.2l, 2018).

And the Commission's now-dated statement indicating that the BOP must file a motion in order for the court to consider a compassionate release sentence reduction no longer controls in the face of the new statutory text enacted explicitly to allow a court to consider a reduction even in the absence of a BOP motion. With the First Step Act, Congress decided that federal judges are no longer constrained or controlled by how the BOP Director sets the criteria for what constitutes extraordinary and compelling reasons for a sentence reduction. Consequently, those sections of the application notes requiring a BOP determination or motion are not binding on courts. See *Stinson v. United States*, 508 U.S. 36, 38 (1993)

("We decide that commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or plainly erroneous reading of, that guideline.").

Put differently, now that the First Step Act has recast the procedural requirements for a sentence reduction, even if the court finds there exists and extraordinary and compelling reason for a sentence reduction without the BOP Director's initial determination, then the sentence is not inconsistent "with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. 3582(c)(l)(A).

## II. *Mr. Upchurch HAS EXTRAORDINARY AND COMPELLING REASONS WHY HIS SENTENCE SHOULD BE REDUCED.*

Mr. Upchurch has properly exhausted his administrative claim for a reduction of sentence under the compassionate release provision, and he presents this court with extraordinary and compelling reasons for reducing his sentence.

A. Upchurch properly exhausted his request for a reduction of sentence under the compassionate release statute. Upchurch filed his last request for a reduction of sentence under the Compassionate Release statute with the warden of his prison at the federal Correctional Institution in Allenwood-Medium, White Deer, PA on April 26th, 2022. See Letter to MED-WARDEN, Assistant Warden McConnell from Sidney Upchurch (04/26/2022) (See Attachment A). The BOP never responded to Upchurch's sentence reduction request, so Upchurch has properly exhausted his claim, as more than 30 days has lapsed. See 18 U.S.C. 3582(c)(1)(A) (courts can reduce-a sentence "upon motion of the defendant," if the defendant has fully exhausted all administrative remedies).

B. Mr. Upchurch has extraordinary and compelling reasons justifying a sentence reduction. See attached letter Exhibits, which states:

Dear Judge John Robert Blakey, I am writing to express support for compassion release of my brother Sidney Upchurch #17103424, as he comes before you Judge Blakey. Our father has Dementia and has severely declined in the last year. My father has several health issues that are: lung cancer that expanded to the brain diagnosis May of 2016, that December of 2016 part of the cancer traveled to his brain which resulted in brain surgery. He has had rounds of chemotherapy and radiation.

He has clubbing of his fingers in the left hand and paralysis of the left arm. We constantly inquired about his cognitive function, but the cancer took priority. I have attached medical forms indicating his diagnosis. Now the cancer is in remission, but the Dementia is in advance stages, and he has no short-term memory. He has also suffered a collapsed lung which required a chest tube.

There are days he doesn't eat, and he currently weighs 117 lbs. at 6 ft tall. When my brother phones his eyes light up every time he hears Sidney's voice. Sidney can even calm him down and get him to eat when I cannot get him to even drink ensure. My dad loves all his children very much, but he and Sidney have a special bond.

The next appointment with the oncologist should have latest chest/abdominal scan as well as head CT-scan to question if COPD is yet another ailment. His refusal to eat and his difficult behavior due to dementia has taken a toll on me. I am taking care of both my mother and father, and it is at the point I can no longer do this alone.

I must go see about my mother who is currently hospitalized and is in and out the hospital. The numerous hospitals and lengthy stays interfere with me taking care of my dad which is why I need my brother home to assist me at this very critical time. Dementia is a very debilitating disease, and it interferes with daily functioning. Dementia is the loss of cognitive functioning – thinking, remembering, and reasoning. Medications may help manage symptoms, but the disease is irreversible.

Although Sidney made some mistakes in the past, he is a changed man who will be a productive and law-abiding citizen upon release. Examples of this include. Sidney has strong feelings of remorse and responsibility for his crime. I believe he has seen how destructive his behaviors became, and I am convinced he is in a much better place emotionally.

Sidney has become a mentor while incarcerated. Sidney has found and is in constant contact with mentors, making plans to secure work and become an entrepreneur.

I believe that fire has been re-ignited in him and he is committed to taking full advantage of his second chance at a normal life.

I am proud to say that Sidney will be well-supported upon release from prison. If he receives parole during this process, here is the plan we have discussed to help him successfully re-enter society.

*Employment* – Aunt Ruta and husband John McClendon owners of McClendon Trucking Company will hire and train Sidney. Also, his sister Wilnessa Mims owns several companies which require assistance, and she will provide employment if needed for Sidney.

*Residence* – Sidney will live in the family building where his first cousin resides. She lives on the second floor, he will occupy the 1st floor at 1304 w. 77th Street, Chicago, Illinois 60620.

*Transportation* – Sidney's sister owns two cars and will provide one for her brother to get

back and forth to employment.

11

**Support System** – Sidney's Pastor Albert Saulsbery will be one of his support and Tahitia Martin his Fiancé will also be a major support. Sidney's sister Wilnessa Mims will also be a part of his support team.

**Clothing** – Although his clothes remain in a family storage area from 18 years ago, we all will provide Sidney with clothes and coats and whatever he needs once home.

I have a daughter in college, and I need to get a job and help her pay tuition, if my brother was here to assist with my father, I would be able to work a part-time job to help my daughter. I just need help, as you know taking care of two severely ill parents can become stressful.

In closing, Sidney is not a threat to society, he is remorseful for his prior actions, he doesn't appear to be the same person that he was when he committed his crimes, and he appears to be passionate about his family, working hard and supporting his father during this diagnosis of Dementia and all the other ailments. Since all his requirements have been met, as he goes before you. The only thing that would be up for review is his behavior and from speaking with my brother and reading all the support letters from counselors, psychology technicians, and safety specialist my brother has become a model inmate. Sidney has served his debt to society, and he deserves the opportunity to work, support his family and his ailing father. He has served more than adequate time for his crimes; therefore, we pray this that you find it is time to restore Sidney Upchurch back to his family and to his community.

Please feel free to contact me at 773-216-2068 if you have any questions. Thank you for your consideration.

Sincerely

Kimberly Parker

In another Letter of Support Sindey Upchurch, the defendant's daughter, who was 14 years old at the time

her dad went to prison writes:

To Whom It May Concern, my name is Sindey Upchurch, and I am writing this letter of support for my father Sidney Upchurch #17103424. Growing up, my father always encouraged us to do the right thing, go to school and get an education.

I was 14 years old when my father left me. He was very involved and kept up daily with my brother and I, making sure we were doing our homework and being productive. I remember my father taking us for dental appointments, doctor appointments and even when we had our braces placed.

I am now a mother of four beautiful children that my father has never seen, held, or kissed. I need my father in my life, to help navigate as a young African American woman in this world. I long for my father to be a part of his grandchildren's life as well. My father's absence has affected my life in many ways, him not being there at my birthday parties and at school events really mad me sad.

I know my father would have been present when all my children were born. Navigating through dating situations would have been easier if I had my dad there to provide his wisdom and advice. His absence was greatly missed, and we cannot get back those years. I speak to my father as often as I can, encouraging him and telling him how much I need and love him. I believe he is a changed man; I can hear it in his voice, and I can tell by the activities he is involved with that are positive during his incarceration.

12

He deserves a second chance, and he has spent the last 18 years of his life incarcerated. I know my father will be a more productive citizen and great father. He has spent these last few years healing himself while working on becoming a better person. Now, I want the chance to see my father build a better life for himself. I want to look across the table and see his bright eyes and beautiful smile as I blow out my birthday candles. I want to spend Christmas with him every year and many years to come. My dad is not the same man that went to prison all those years ago, he is a parent, a grandfather, a brother, an uncle, a son, and he is loved.

Please feel free to contact me at 773-966-9027 if you have any questions. Thank you for your consideration.

Sincerely,

Sindey Upchurch

In another letter of Support Ms. Tahitia Martin, Mr. Upchurch's fiancé writes:


Dear Judge John Robert Blakey, I am writing this letter of support for Mr. Sidney Upchurch whom I consider a very good friend. I have known him and his family over 25 years. Mr. Upchurch has learned from this experience and will continue to exhibit and practice this changed behavior upon release. We have all made bad decisions in our life, I know I have, and the best part is that I learned from it. This situation has changed Mr. Upchurch and made him grow closer to God. A mistake cannot be undone but after rethinking your actions going through the stages of feeling ashamed you realize that life goes on and better days are ahead.

Mr. Upchurch has learned compassion, how to set boundaries in his life and not cross them. Mr. Upchurch has grown in the area of loving himself and others. He Mr. Upchurch now recognizes and has great respect for the restrictions of human nature and is kind, accepting and forgiving. Mr. Upchurch has served 18 years of his sentence. He is a model inmate and has become a peace maker among his peers.

I write to encourage Mr. Upchurch and find him to be very understanding during all the different factors beyond his control. I constantly remind him that we are all only human and that all people have both strengths and weaknesses. I encourage him to concentrate on his strengths and always acknowledge the weaknesses.

I offer my unconditional support, love, and acceptance to Mr. Upchurch. He has a solid support system through his family, and they are taking the necessary steps to gather support to aid in his release from prison. I will do everything I can to support his continued growth, mentorship and assistance getting to a job, and keeping a job. He has a family and a circle of support that will help him to be successful when he comes home. I encourage Mr. Upchurch to be kinder and patient to himself as he begins to transition home.

In closing, I would like to reiterate that I believe Sidney Upchurch is a changed man who is ready for the opportunity of freedom again. His commitment to personal transformation is evident to me and his family. Our prayer is that you can see the positive changes he has made through his leadership and behavior throughout his incarceration.

Please feel free to contact me at Tahitia.martin@comcast.net or 708-941-5511 if you have any questions. Thank you for taking the time to review this letter.

Sincerely,

Tahitia Martin

Mr. Upchurch's uncle, Marvin Upchurch, a retired member of the armed forces writes:

The Honorable Judge John Robert Blakey

Dear Judge Blakey, my name is Marvin Upchurch, and I am the uncle of Sidney Upchurch. Sidney is more than a number. He is a father, a son, a grandfather, and he is loved by his family. He is smart and funny with a big heart, and he can learn from his mistakes. I have seen him mature and grow during this difficult time.

He has a support system, a mother that loves him and a family looking forward to his return to society. We will surround him with support, friendship, guidance, and love to help him transition back to becoming a productive member of his community. We pray that you will consider his release and want you to realize that he is not in this alone.

Thank you for the consideration and we assure you that we will be with him every step of the way.

Sincerely,

Marvin Upchurch SSG.USA (ret.)

In another letter of support, Mrs. Ruta McClendon, Petitioners aunt writes:

Attention: Honorable Judge John Robert Blakey

My name is Ruta McClendon, and I am writing this letter of support for my nephew Sidney Upchurch (ID #17103424). Upon his release from incarceration my intent is to hire him so that he satisfies his requirement for employment. I am an employer in the Healthcare field who has over 20 years of managerial experience and have employed a high volume of diverse individuals during my tenure.

I have had the opportunity to work with so many people who have been able to advance in their careers in various fields. I am not a stranger to hiring individuals with criminal backgrounds and it has enhanced my passion as well when I am able to help someone change their path in life. I have hired known felons who had criminal backgrounds ranging from drugs to murder and it has not been a surprise when I find individuals who have these types of backgrounds applying for positions.

I support and advocate for "second chances" and empowering people to change their past by providing employment and mentoring. This is easily achievable when someone is willing to put forth the effort in helping those who normally will not even be considered in the average work environment.

As you are aware, there are limited opportunities for convicted felons, and with that being said, it is primarily an easy path in the wrong direction that many take due to these concerns. However, I personally believe that the more someone shows that they are willing to trust and that they believe in you, the more that a person is unlikely to resort to their past.

Therefore, I have made the commitment to hire my nephew Mr. Sidney Upchurch upon his release. I am willing to give him that "second chance" that so many convicted felons deserve. I am willing to hire and

monitor his progress back into society without hesitation and I truly believe that he can do so with the proper resources that I can provide.

I am reaching out to you directly as a way for you to see that Mr. Upchurch will have a meaningful way of supporting himself and his family when he is released. I would like to thank you for your time and consideration.

Respectfully,

Ruta McClendon

In support of his Fathers release, Sidney Upchurch Jr. Writes:

Re: Sidney Upchurch

Dear Judge, I am writing this letter of support for my father Sidney Upchurch (ID #17103424). I am his son Sidney "Scooter" Upchurch Jr. and I am proud to be his son. I am a father of one beautiful intelligent child. My father has made mistakes in his past, he is very remorseful and is a different man now. As a young man, I long for guidance from my father. I am a good man and a decent human being. Both of parents are responsible for instilling morals and values for me to live by.

My father has been incarcerated for 18 years and he has put in the work to better himself. He has sought and committed to counseling. My father has become a leader among his peers. I hear the excitement in his voice when he speaks about fellow inmates seeking advice and being a mentor.

I need my father in my life as a mentor and a friend. I would like for you to consider releasing him due to the high amount of people that are being infected inside of the prison system. I know there are many inmates that are infected and have infected other inmates.

I know that this is a big favor to ask, but it has been so many years that I have not been able to see and hug my dad. He has missed a lot in my life that I wish he could have been a part of. I know your time to read this is short and I want to thank you for letting me express how I feel about my dad.

Thank you,

Sidney Upchurch Jr.


Sidney Upchurch's mother writes:

Dear Honorable Judge John Robert Blakey,

I am writing this compassion release letter on behalf of my son Sidney Upchurch ID #17103424 with a heavy heart and in hopes that you will allow me the opportunity to provide you with insight about my son.

Sidney is not my only living son and the oldest. My son has served 18 years of his life due to crimes that were committed in which he was a willing participant that negatively affected the lives of others, and I believe he should be released to care for his ailing father and reunite with his family. I have written several letters in support of Sidney's release but not one has been more urgent than this support letter.

Sidney's father has deteriorated over the last few years and his is only 117 lbs. at 6 ft tall. He has long acknowledged that his decisions during that time in his life has resulted in his current status. He has also acknowledged how his actions has costed him many years of not being with his family.

15

During Sidney's incarceration, he has lost several immediate family members which include his loving grandmother and my mother Maggie Upchurch; two uncles who were my brothers, James, and Terry Upchurch; and his younger brother and my youngest son, Jerry Upchurch who died unexpectedly. He also lost his former brother-in-law who died of Covid-19 in March.

Sidney also did not have the opportunity to welcome any of his five grandchildren during their births and has only met two of them to date due to the distance of the facilities in which he has been housed.

As a mother, it was extremely painful and heartbreaking to have to bury my other son and it is something that I have been trying to mentally deal with every day of my life. There isn't a day that I don't think about my children, especially during the times in which we are currently living in. He has always been the family member that everyone went to with their problems in which he did whatever he could to help them. He was the first person to call me every morning just to check on me and make sure that I was okay. He was the son that would go out of his way to make sure that I had whatever I needed.

During his incarceration, his sister has been raising three boys in which he has been a strong secondary father figure. However, due to his two older nephews losing their father, he has taken on the responsibilities of being there for them as best he can by phone.

He calls and talks to them often to make sure they know that they have him in their lives and to help them adjust to life without their fathers. He has willingly taken on this without hesitation because this is who Sidney really is as a person.

Sidney has made mistakes that caused him to be in the situation that he is currently in; however, he is the most caring and loving person who is family oriented.

My daughter and I currently have several businesses which include a medical car transportation service and two daycare centers. I know that Sidney would put forth the efforts to help us maintain the businesses and allow us to have some stress relief in doing so.

I am older now and it is becoming harder for me to assist my daughter with the businesses as well as to help her care for her son, who has been diagnosed with autism and require constant monitoring and care. I travel to and from her home to assist with caring for her three boys since the pandemic and I try to help fulfill our business obligations as much as I can while doing so. These responsibilities are quite challenging to deal with especially at my age.

I would like to thank you for reading my letter and pray that you will take all this information into consideration when evaluating my son for release.

Sincerely,

Janice Upchurch-Mims


Ms.Wilnessa Mims, petitioners sister writes:

Good morning, Judge Blakey,

I am writing this letter to you in hopes that you will allow me a few moments of your time during your hectic schedule.

I am Wilnessa Mims, and I am the sister of inmate Sidney Upchurch (ID #17103424) who has been in custody for 18 years. Sidney is my older brother out of three children by my mother. He was always and

still is my big brother, who I look up to no matter what. He has always been and even more so now a strong support for me and my three boys.

Sidney has helped me deal with the recent loss of our other brother, Jerry Upchurch, by calling and checking on us daily. He always makes it a point to contact me to see how the boys and I are doing, especially now since I have experienced the loss of my middle son's father and our brother within months of each other.

I have been to a place in my mind after these deaths that had scared me and Sidney helped me to put things in prospective when I thought I was going to give up. I know this is not what you expect to hear, but I feel as though I need to be completely honest as to why I have chosen to contact you on his behalf.

While life has been challenging for many people, my family has tried to stay strong and get through it as best as possible. My brother has had COVID twice since his incarceration. However, I still cannot help but think about the reality of losing another family member at this time due to the virus.

My brother's family support while incarcerated has been super supportive and I think this is a major factor in his positive attitude and his growth. He has become a role model to other inmates and to his family. This is an important piece of who my brother has become, and I am so proud of him and love him very much.

My mother who is 72 years old, has been a huge support for me by helping with the boys and helping me to run my businesses. However, her age has begun to be a huge factor in her inability to help with multiple facets of the businesses.

I only have one brother left and it would be a great to have Sidney home to help me with raising my boys as well as the operations of my businesses. I am totally prepared to support him financially and to have employment for him if he can be released.

I appreciate the time that you have taken to read my letter and I appreciate your time in reviewing this matter.

Best regards,

Wilnessa Mims

Staff members at FCI Allenwood who have worked closely with Mr. Upchurch had also written letter of support for Mr. Upchurch petition for compassionate release.

S. Getchey, the Psychology Technician in Unit 4 writes:

I am writing this letter of recommendation on behalf a Upchurch, Sidney #17103-424. Mr. Upchurch has been the head orderly in Unit A-4 since December of 2016 and has gone incident free while at FCI Allenwood. Mr. Upchurch is not only an asset to Unit A-4, but to many other Departments as well. He is often utilized and is more than helpful when other departments as in need. Mr. Upchurch has caused no issues while at FCI Allenwood and in known by staff and spoken very highly of for his work ethic and overall positive personal demeanor. I do believe that if released, Mr. Upchurch would be a great asset to his community and a positive influence on those around him.

It should be noted that since the Covid-19 pandemics outbreak throughout the Federal Prison system specifically at FCI Allenwood-Medium, Mr. Upchurch as acted as a First Responder, ensuring that both staff and inmates have sanitized offices and living quarters. He not only sanitizes the staff areas and living quarters for the inmates, but he also assists in the distribution of cleaning supplies and commissary.

In Summary, another staff letter from F. Martin, the Unit Counselor writes:

To Whom it may concern; Inmate Upchurch, Sidney #17103-424 has been incarcerated within the Bureau of Prisons since June 27, 2004. Inmate Upchurch has received two incident reports since his initial incarceration, one in 2005 for possessing anything unauthorized and another in 2006 for possessing a cell phone. Each DHO report states inmate Upchurch had taken full responsibility and apologetic for each infraction. Inmate Upchurch arrived at his current prison (FCI Allenwood) on September 23, 2016. During that time frame from arrival at FCI Allenwood, inmate Upchurch has received zero incident reports. I have been inmate Upchurch's unit counselor since January 2020. During that time, I have promoted inmate Upchurch as head unit orderly (A Trusted Position). I have known inmate Upchurch to be a positive role model to younger and older inmates alike. I have personally witnessed inmate Upchurch deescalate an incident between inmates that prevented a serious incident that could have become detrimental to staff and inmates. Inmate Upchurch has displayed a positive behavior and has maintained a positive image with his unit team and staff at FCI Allenwood. I understand the magnitude of given a recommendation and I'm fully aware that this recommendation might influence a reduction in sentence. This recommendation is not taken lightly and is the only recommendation I have ever written. I truly believe inmate Upchurch is rehabilitated and will become a productive member of society if given the opportunity to reintegrate into society.

F. Martin, Unit Counselor FCI Allenwood-Medium.

Attached for the Courts review is Mr. Upchurch's Discipline DATA showing a Chronological Disciplinary report, including a third incident report for sending money to another inmate.

Mr. Upchurch has a MALE PATTERN RISK SCORING of LOW. And therefore, according to this DATA, poses little risk if any to society and for recidivism.

Finally, Mr. Upchurch's remarkable record of rehabilitation adds to the determination that he presents extraordinary and compelling reasons in support of sentence reduction. At age thirty-nine, Mr. Upchurch was sentenced to twenty-Seven years imprisonment. While most young men would have been devastated and rebelled against such a bleak outlook, Mr. Upchurch chose a different path enrolling in and successfully completing many programs offered by the BOP.

### III. THIS COURT SHOULD EXERCISE ITS DISCRETION AND RESENTENCE Upchurch

In determining whether Upchurch's sentence should be reduced, the Court must decide, inter alia, whether he presents a danger to the safety of any other person or to any community, as provided in l8 U.S.C. 3B1.2(g). U.S.S.G. I Bl .13(2). If, he does not, the Court looks to the factors outlined in l8 U.S.C. 3553(a).

As explained below, all these factors weigh strongly in favor of relief in Upchurch's case. A. Upchurch is not a danger to the community, a finding supported by his PATTERN SCORE assessment The evolution of Upchurch's 'character in more than 18-years of incarceration further exemplifies he is no danger.

The fact that Upchurch will be an asset to his community is further demonstrated by the multiple offers of employment that have already been extended to him. Upchurch will live with family members and care for his parents, who are both in their 70's and inflicted with many medical ailments and need Upchurch's vital assistance. The entire family has agreed to help Mr. Upchurch obtain transportation, health insurance, and anything else needed to smoothly transition back into the community.

Mr. Upchurch also is being considered for work with American Litigation Consultant LLC's intervention program for teens and young adults, where he will have the opportunity to tell his story and to give back

19

to his community. He is passionate and motivated to work with local youth organization and become involved in criminal justice reform. Using his experiences, he is uniquely situated to make a significant and positive impact in his community.

The combination of his stable living arrangements, his multiple employment offers, and his strong desire to mentor at-risk youths, further demonstrates that Upchurch is no danger but rather a needed asset to his community.

B. The relevant 3553(a) factors weigh heavily in favor of sentence reduction. This Court must next weigh the factors set forth in the 18 U.S.C. 3553(a) to determine whether Upchurch's request for sentence reduction should be granted.

As discussed above, his extraordinary rehabilitation record weigh heavily in favor of a reduced sentence. Upchurch has acknowledged that his conduct was unlawful, and he has taken full responsibility for his actions. He has already endured 18-years of punishment for his crime, any reduction would not promote disrespect for the law. The 18-plus years Upchurch has already served in prison have been transformative for him. He has dedicated himself to educational and vocational endeavors and volunteering his time to tutor and mentor other prisoners. Upchurch epitomizes 3553(a)(2)(D), the need for the sentence "to provide the defendant with the needed educational and vocational training...in the most effective manner."

While the offense Upchurch was convicted of is serious, the many years Upchurch has already served for his crimes is a more than adequate deterrent and a very substantial punishment for a young man. See 3553(a)(2)(A)-(B)

Finally, this Court should consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. 3553(a)(6). This factor too, weighs strongly in favor of sentence reduction for Upchurch. Upchurch is deserving of sentence reduction.

With the passage of the First Step Act, Congress emphasized the imperative of reducing unnecessary incarcerations and avoiding unduly punitive sentences that do not serve the ends of justice. ***United States v. Simons***, No. 07-cr-00874,2019 WL, at'*8 (E.D.N.Y. Apr.22,2019). As outlined above, Upchurch is a model of rehabilitation. He has spent his time in prison improving himself, helping those around him, and working toward justice for himself and others. He has demonstrated an unwavering commitment to becoming a productive member of society and a responsible father and grandfather. He has learned invaluable skills while incarcerated, all of which he plans to put to use when working with at-risk youths and community organizations. Simply put, Upchurch's life prospects are very bright for a man who has spent the past l8-years incarcerated, and he has a network of supporters willing and able to assist him in his transition back into the community.

This court is aware of Mr. Upchurch's medical conditions and the fact that even after receiving all the vaccines offered by the BOP, he has, probably do to his working conditions as a first responder within his prison community, contracted Covid-19 twice. This also should be considered by this Honorable Court As of 05/27/2022 - The BOP has **139,366** federal inmates in BOP-managed institutions and **13,624** in community-based facilities. The BOP staff complement is approximately **36,000**. There are **97 federal inmates** and **248 BOP staff** who have confirmed positive test results for COVID-19 nationwide. Currently, **51,352** inmates and **12,722** staff have recovered. There have been **295** federal inmate deaths and **7** BOP staff member deaths attributed to COVID-19 disease...

## *CONCLUSION*

Congress has now given the Court the power to grant Upchurch relief from that sentence. Mr. Upchurch respectfully requests that this Court grant a sentence reduction based on extraordinary and compelling reasons outlined herein and reduce his sentence to time served.

Respectfully presented this ___ day of June 2022.

Sidney Upchurch #17103424

FCI Allenwood-Medium

Federal Correctional Institution

P.O. Box 2000

White Deer, PA 17887

## Certificate of Service

I, Sidney Upchurch, hereby Certify that a true and correct copy of the foregoing, with attachments, has been mailed to the United States Attorney's Office for the Northern District of Illinois this  1st  day of June 2022, postage prepaid.

Respectfully,

Sidney Upchurch #17103424

FCI Allenwood-Medium

Federal Correctional Institution

P.O. Box 2000

White Deer, PA  17887

Prepared By Paul Tallini CEO

American Litigation Consultant LLC

5117 Inverness Dr.

Sarasota, Florida 34243

Tel. 407-953-4074

Paultallini@gmail.com

Americanlitigationconsultant@gmail.com



**U.S. Department of Justice**
**Memorandum**
Federal Bureau of Prisons

*Federal Correctional Complex, Allenwood*

---

Federal Correctional Institution
P.O. Box 2500
White Deer, PA 17887

November 6, 2020

FROM:          F. Martin Unit Counselor

SUBJECT:       UPCHURCH, SIDNEY          # 17103-424
               DOB:                      08-03-1965

To Whom It May Concern:

Inmate Upchurch, Sidney#17103-424 has been incarcerated with the Bureau of Prisons since June 27, 2004. Inmate Upchurch has received two incident reports since his initial incarceration, one in 2005 for possessing anything unauthorized and another in 2016 for possessing a cell phone. Each DHO report states inmate Upchurch had taken full responsibility and apologetic for each infraction. Inmate Upchurch arrived at his current correctional facility (FCI ALLENWOOD) on September 23, 2016. During that time frame from his arrival at FCI Allenwood, inmate Upchurch has received zero incident reports. I have been inmate Upchurch's unit counselor since January 2020. During that time, I have promoted inmate Upchurch as head unit orderly (Trusted Position). I have known inmate Upchurch to be a positive role model to younger and older inmates alike. I have personally witnessed inmate Upchurch deescalate an incident between inmates that prevented a serious incident that could have become detrimental to staff and inmates. Inmate Upchurch has displayed a positive behavior and has maintained a positive image with his unit team and staff at FCI Allenwood. I understand the magnitude of given a recommendation and I'm fully aware that this recommendation might influence a reduction in sentence. This recommendation is not taken lightly and the only recommendation I have ever written. I truly believe inmate Upchurch is rehabilitated and will become a productive member of society if given the opportunity to reintegrate into society.

F. Martin, Unit Counselor
FCI Allenwood



**U.S. Department of Justice**

**Memorandum**

Federal Bureau of Prisons

*Federal Correctional Complex, Allenwood*

*FCI Allenwood*
*P.O. Box 2500*
*White Deer, PA  17887*

**DATE:**  11/04/2020

**TO:**  Whom It May Concern

**FROM:**  S. Getchey, Psychology Technician Unit 4

**SUBJECT:**  Upchurch, Sydney #17103-424

I am writing this letter of recommendation on behalf of Upchurch, Sydney #17103-424. Mr. Upchurch has been the head orderly in Unit 4A since December of 2016 and has gone incident free while at FCI Allenwood. Mr. Upchurch is not only an asset to Unit 4, but to many other departments as well. He is often utilized and is more than helpful when other departments are in need. Mr. Upchurch has caused no issues while at FCI Allenwood and is known by staff and spoken very highly of for his work ethic and overall positive personal demeanor. I do believe that if released, Mr. Upchurch would be a great asset to his community and a positive influence on those around him.

## MALE PATTERN RISK SCORING

| Register Number: | 17103-424 | Date: | 3/1/2021 |
|---|---|---|---|
| Inmate Name: | Upchurch | Sidney | |

| MALE RISK ITEM SCORING | CATEGORY | GENERAL SCORE | Enter Score | VIOLENT SCORE | Enter Score |
|---|---|---|---|---|---|
| **1. Current Age** <br> 51-60 <br> Click on gray dropdown box to select, then click on dropdown arrow | > 60 | 0 | | 0 | |
| | 51-60 | 7 | | 4 | |
| | 41-50 | 14 | | 8 | |
| | 30-40 | 21 | 7 | 12 | 4 |
| | 26-29 | 28 | | 16 | |
| | < 26 | 35 | | 20 | |
| **2. Walsh w/ Conviction** <br> No | No | 0 | | 0 | |
| | Yes | 1 | 0 | 0 | 0 |
| **3. Violent Offense (PATTERN)** <br> Yes | No | 0 | | 0 | |
| | Yes | 5 | 5 | 5 | 5 |
| **4. Criminal History Points** <br> 10 - 12 Points | 0 - 1 Points | 0 | | 0 | |
| | 2 - 3 Points | 8 | | 4 | |
| | 4 - 6 Points | 16 | | 8 | |
| | 7 - 9 Points | 24 | 32 | 12 | 16 |
| | 10 - 12 Points | 32 | | 16 | |
| | > 12 Points | 40 | | 20 | |
| **5. History of Escapes** <br> > 10 Years Minor | None | 0 | | 0 | |
| | > 10 Years Minor | 2 | | 1 | |
| | 5 - 10 Years Minor | 4 | 2 | 2 | 1 |
| | < 5 Years Minor/Any Serious | 6 | | 3 | |
| **6. History of Violence** <br> None | None | 0 | | 0 | |
| | > 10 Years Minor | 1 | | 1 | |
| | > 15 Years Serious | 2 | | 2 | |
| | 5 - 10 Years Minor | 3 | | 3 | |
| | 10 - 15 Years Serious | 4 | 0 | 4 | 0 |
| | < 5 Years Minor | 5 | | 5 | |
| | 5 - 10 Years Serious | 6 | | 6 | |
| | < 5 Years Serious | 7 | | 7 | |
| **7. Education Score** <br> HS Degree / GED | Not Enrolled | 0 | | 0 | |
| | Enrolled in GED | -2 | -4 | -1 | -2 |
| | HS Degree / GED | -4 | | -2 | |
| **8. Drug Program Status** <br> No Need | No DAP Completed | 0 | | 0 | |
| | NRDAP Complete | -3 | | -1 | |
| | RDAP Complete | -6 | -9 | -2 | -3 |
| | No Need | -9 | | -3 | |
| **9. All Incident Reports (120 months)** <br> 1 | 0 | 0 | | 0 | |
| | 1 | 1 | 1 | 1 | 1 |
| | 2 | 2 | | 2 | |
| | > 2 | 3 | | 3 | |
| **10. Serious Incident Reports (120 months)** <br> 1 | 0 | 0 | | 0 | |
| | 1 | 2 | 2 | 2 | 2 |
| | 2 | 4 | | 4 | |
| | > 2 | 6 | | 6 | |
| **11. Time Since Last Incident Report** <br> 12+ months or no incidents | 12+ months or no incidents | 0 | | 0 | |
| | 7-12 months | 2 | | 1 | |
| | 3-6 months | 4 | 0 | 2 | 0 |
| | <3 | 6 | | 3 | |
| **12. Time Since Last Serious Incident Report** <br> 12+ months or no incidents | 12+ months or no incidents | 0 | | 0 | |
| | 7-12 months | 1 | | 2 | |
| | 3-6 months | 2 | 0 | 4 | 0 |
| | <3 | 3 | | 6 | |
| **13. FRP Refuse** <br> NO | NO | 0 | | 0 | |
| | YES | 1 | 0 | 1 | 0 |
| **14. Programs Completed** <br> 2 - 3 | 0 | 0 | | 0 | |
| | 1 | -2 | | -1 | |
| | 2 - 3 | -4 | -4 | -2 | -2 |
| | 4 - 10 | -6 | | -3 | |
| | > 10 | -8 | | -4 | |
| **15. Work Programs** <br> >1 Program | 0 Programs | 0 | | 0 | |
| | 1 Program | -1 | -2 | -1 | -2 |
| | >1 Program | -2 | | -2 | |
| **Total Score (Sum of Columns)** | | General: | 30 | Violent: | 20 |
| **General/Violent Risk Levels** | | General: | Low | Violent: | Low |
| **OVERALL MALE PATTERN RISK LEVEL** | | | | | **Low** |

## Summary Reentry Plan - Progress Report

Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: UPCHURCH, SIDNEY 17103-424

SEQUENCE: 00304689
Report Date: 05-11-2022



| | |
|---|---|
| Facility: | ALM ALLENWOOD MED FCI |
| Name: | UPCHURCH, SIDNEY |
| Register No.: | 17103-424 |
| Quarters: | D03-213L |
| Age: | 56 |
| Date of Birth: | 08-03-1965 |

| | |
|---|---|
| Custody Level: | IN |
| Security Level: | MEDIUM |
| Proj. Rel Date: | 05-29-2027 |
| Release Method: | GOOD |
| DNA Status: | RBK02419 / 01-07-2011 |

### Offenses and Sentences Imposed

| Charge | Terms In Effect |
|---|---|
| 18:1951(A)-CONSPIRING TO INTERFERE W/COMMERCE BY THREATS OR VIOLENCE CTS. 1,2,8,12,18,22,24. | 240 MONTHS |
| 18:924(C)(1)(A)-USING, CARRYING & BRANDISHING A F/A DURING & IN RELATION TO A VIOLENT CRIME. CT3 | 84 MONTHS |

Date Sentence Computation Began: 05-25-2006

Sentencing District: ILLINOIS, NORTHERN DISTRICT

| Days FSGT / WSGT / DGCT | Days GCT or EGT / SGT | Time Served | + Jail Credit - InOp Time |
|---|---|---|---|
| 0 / 0 / 187 | 785 | Years: 18 Months: 5 Days: | +916 JC -0 InOp |

### Detainers

| Detaining Agency | Remarks |
|---|---|
| NO DETAINER | |

### Program Plans

| |
|---|
| ** No notes entered ** |

### Current FSA Assignments

| Assignment | Description | Start |
|---|---|---|
| FTC INELIG | FTC-INELIGIBLE-REVIEWED | 11-18-2019 |
| INELIG AUT | FTC-INELIGIBLE OFF CODE - AUTO | 12-17-2019 |
| N-ANGER N | NEED - ANGER/HOSTILITY NO | 02-06-2022 |
| N-ANTISO Y | NEED - ANTISOCIAL PEERS YES | 02-06-2022 |
| N-COGNTV Y | NEED - COGNITIONS YES | 02-06-2022 |
| N-DYSLEX N | NEED - DYSLEXIA NO | 05-28-2021 |
| N-EDUC N | NEED - EDUCATION NO | 02-06-2022 |
| N-FIN PV N | NEED - FINANCE/POVERTY NO | 02-06-2022 |
| N-FM/PAR N | NEED - FAMILY/PARENTING NO | 02-06-2022 |
| N-M HLTH N | NEED - MENTAL HEALTH NO | 02-06-2022 |
| N-MEDICL Y | NEED - MEDICAL YES | 02-06-2022 |
| N-RLF Y | NEED - REC/LEISURE/FITNESS YES | 02-06-2022 |
| N-SUB AB Y | NEED - SUBSTANCE ABUSE YES | 02-06-2022 |
| N-TRAUMA N | NEED - TRAUMA NO | 02-06-2022 |
| N-WORK Y | NEED - WORK YES | 02-06-2022 |
| R-MED | MEDIUM RISK RECIDIVISM LEVEL | 02-06-2022 |

### FSA Comments

| |
|---|
| ** No notes entered ** |

### Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| ALM | UNT 4A ORD | UNIT 4 A ORDERLY | 07-05-2021 |

### Work Assignment Summary

| |
|---|
| ** No notes entered ** |

TRULINCS 17103424 - UPCHURCH, SIDNEY - Unit: ALM-D-A

---------------------------------------------------------------------------------------------

FROM: 17103424
TO: MED Warden
SUBJECT: ***Request to Staff*** UPCHURCH, SIDNEY, Reg# 17103424, ALM-D-A
DATE: 04/26/2022 03:04:32 PM

To: To whom it may cocern/AW Gibson
Inmate Work Assignment: 4a Head Orderly

I'm requesting to have you submit a second compassionate release motion for me..I sulfur from chronic Kidney & Hypertension
I have contracted Covid twice and I am very worry about dying from a third time.. I'm submiting this request to The Warden
Office based on the fact that I met they criteria for compassionate release and due to the circumstances that this instruction is
returning to the covid-19 matric schedule as a result the high community transmission rate Please put the instant request under
immediate consideration Thank you..

## Summary Reentry Plan - Progress Report

Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: UPCHURCH, HENRY  17103-424

SEQUENCE: 00304689
Report Date: 05-11-2022

### Current Education Information

| Facl | Assignment | Description | Start |
|------|-----------|-------------|-------|
| ALM | ESL HAS | ENGLISH PROFICIENT | 04-16-2008 |
| ALM | GED HAS | COMPLETED GED OR HS DIPLOMA | 04-22-2008 |

### Education Courses

| SubFacl | Action | Description | Start | Stop |
|---------|--------|-------------|-------|------|
| ALM | C | RHU ACE INTRO TO OSHA | 02-10-2022 | 02-13-2022 |
| ALM | C | RHU WORLD WAR 1 | 02-10-2022 | 03-10-2022 |
| ALM | C | RHU ENHANCING YOUR | 02-10-2022 | 03-10-2022 |
| ALM | C | RHU ENHANCING YOUR | 12-16-2021 | 12-20-2021 |
| ALM | C | RHU ACE US CONSTITUTION | 12-16-2021 | 01-04-2022 |
| ALM | C | RHU RESUME WRITING | 12-16-2021 | 01-04-2022 |
| ALM | C | RHU EARLY CIVILIZATIONS | 12-16-2021 | 12-20-2021 |
| ALM | C | RHU FAMOUS MALE SPORTS STARTS | 10-18-2021 | 10-21-2021 |
| ALM | C | RHU ACE HISTORY MANIFEST DEST | 09-20-2021 | 09-23-2021 |
| ALM | C | RHU ACE CLIMATE CHANGE COURSE | 09-20-2021 | 09-23-2021 |
| ALM | C | RHU CHECKBOOK MATH | 03-08-2021 | 03-10-2021 |
| ALM | C | RHU ACE MIND STRENGTH | 09-14-2020 | 09-16-2020 |
| ALM | C | RHU EARLY NORTH AMERICA | 09-14-2020 | 09-16-2020 |
| ALM | C | RHU PASS THE US CITIZENSHP TEST? | 09-14-2020 | 09-16-2020 |
| ALM | C | RHU ANIMAL ANATOMY 14:URINARY | 08-26-2020 | 08-28-2020 |
| ALM | C | RHU ANIMAL ANATOMY 13:DIGESTN | 08-25-2020 | 08-27-2020 |
| ALM | C | RHU ANIMAL ANATOMY 12:LYMPHATC | 08-14-2020 | 08-17-2020 |
| ALM | C | RHU ANIMAL ANATOMY 11:RESPRAT | 08-14-2020 | 08-17-2020 |
| ALM | C | RHU ANIMAL ANATOMY 10:CIRCULAT | 08-03-2020 | 08-05-2020 |
| ALM | C | RHU ANIMAL ANATOMY 9: HEART | 08-03-2020 | 08-05-2020 |
| ALM | C | RHU ANIMAL ANATOMY 8:BLOOD | 07-24-2020 | 07-27-2020 |
| ALM | C | RHU ANIMAL ANATOMY 7:MUSCLE | 07-24-2020 | 07-27-2020 |
| ALM | C | REACH ONE COUNSELOR | 10-17-2017 | 01-30-2018 |
| ALM | C | ACE FREIGHT BROKERING | 06-26-2017 | 09-08-2017 |
| ALM | C | RP2:8HR PENNDOT FLAGGER CERT | 08-14-2017 | 08-14-2017 |
| ALM | C | TYPING ACE | 05-26-2017 | 05-31-2017 |
| FTD GP | C | COPING WITH INCARCERATION | 09-28-2015 | 11-09-2015 |
| FTD GP | C | COPING WITH INCARCERATION | 11-09-2015 | 11-09-2015 |
| ELK | C | DIVERSITY AWARENESS-RPP-PG> | 11-30-2011 | 11-30-2011 |
| ELK | C | AIDS AWARENESS-RPP-HR> | 11-30-2011 | 11-30-2011 |
| LEE | C | RP2:SUCCEEDING IN WORKPLACE | 04-21-2008 | 05-29-2008 |
| LEE | C | RP2:TACTICS FOR CAR-PLACEMT | 05-12-2008 | 05-29-2008 |

### Education Information Summary

** No notes entered **

### Discipline Reports

| Hearing Date | Prohibited Acts |
|--------------|-----------------|
| 06-09-2021 | 299 : DISRUPTIVE CONDUCT-HIGH |
| 07-27-2016 | 328 : GIVING/ACCEPTING MONEY W/O AUTH |
| 10-03-2005 | 108 : POSSESSING A HAZARDOUS TOOL |
|  | 305 : POSSESSING UNAUTHORIZED ITEM |

### Discipline Summary

** No notes entered **

### ARS Assignments

| Facl | Assignment | Reason | Start | Stop |
|------|-----------|--------|-------|------|
| ALM | A-DES | OTHER AUTH ABSENCE RETURN | 05-09-2018 | CURRENT |
| ALM | A-DES | OTHER AUTH ABSENCE RETURN | 02-28-2017 | 05-09-2018 |

Sentry Data as of 05-11-2022          Summary Reentry Plan - Progress Report          Page 2 of 4

# Summary Reentry Plan - Progress Report

Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: UPCHURCH, SIDNEY 17013-424

SEQUENCE: 00304689
Report Date: 05-11-2022

| Facl | Assignment | Reason | Start | Stop |
|------|-----------|--------|-------|------|
| ALM | A-DES | OTHER AUTH ABSENCE RETURN | 01-19-2017 | 02-28-2017 |
| ALM | A-DES | TRANSFER RECEIVED | 09-08-2016 | 01-19-2017 |
| FTD GP | A-DES | TRANSFER RECEIVED | 08-25-2015 | 08-30-2016 |
| ELK | A-DES | TRANSFER RECEIVED | 11-07-2011 | 08-18-2015 |
| RBK | A-DES | TRANSFER RECEIVED | 10-09-2008 | 10-28-2011 |
| LEE | A-DES | US DISTRICT COURT COMMITMENT | 03-26-2008 | 08-07-2008 |

## Current Care Assignments

| Assignment | Description | Start |
|-----------|-------------|-------|
| CARE1-MH | CARE1-MENTAL HEALTH | 08-15-2010 |
| CARE2 | STABLE, CHRONIC CARE | 11-16-2011 |

## Current Medical Duty Status Assignments

| Assignment | Description | Start |
|-----------|-------------|-------|
| C19-RCVRD | COVID-19 RECOVERED | 01-28-2022 |
| PAPER | LEGACY PAPER MEDICAL RECORD | 10-29-2018 |
| REG DUTY | NO MEDICAL RESTR-REGULAR DUTY | 09-12-2016 |
| YES F/S | CLEARED FOR FOOD SERVICE | 09-16-2015 |

## Current PTP Assignments

| Assignment | Description | Start |
|-----------|-------------|-------|
| NO ASSIGNMENTS | | |

## Current Drug Assignments

| Assignment | Description | Start |
|-----------|-------------|-------|
| ED COMP | DRUG EDUCATION COMPLETE | 03-22-2010 |

## Physical and Mental Health Summary

** No notes entered **

## FRP Payment Plan

### Most Recent Payment Plan

| FRP Assignment: | PART | FINANC RESP-PARTICIPATES | | Start: 06-03-2015 |
|---|---|---|---|---|
| Inmate Decision: | AGREED | $100.00 | Frequency: | QUARTERLY |
| Payments past 6 months: | $200.00 | | Obligation Balance: | $430,052.33 |

Financial Obligations

| No. | Type | Amount | Balance | Payable | Status |
|-----|------|--------|---------|---------|--------|
| 1 | ASSMT | $600.00 | $488.75 | IMMEDIATE | |
| | | | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | |
| 2 | REST FV | $432,704.00 | $430,052.33 | IMMEDIATE | |

| | Adjustments: | Date Added | Facl | Adjust Type | Reason | Amount |
|---|---|---|---|---|---|---|
| | | 03-08-2022 | ALM | PAYMENT | INSIDE PMT | $100.00 |
| | | 12-14-2021 | ALM | PAYMENT | INSIDE PMT | $100.00 |

## Financial Responsibility Summary

** No notes entered **

## Release Planning

** No notes entered **

## General Comments

** No notes entered **

# Summary Reentry Plan - Progress Report

Dept. of Justice / Federal Bureau of Prisons

Plan is for inmate: UPCHURCH, SIDNEY 17103-424

SEQUENCE: 00304689

Report Date: 05-11-2022

Name: UPCHURCH, SIDNEY
Register Num: 17103-424
Age: 56
Date of Birth: 08-03-1965
DNA Status: RBK02419 / 01-07-2011

Inmate (UPCHURCH, SIDNEY, Register Num: 17103-424)

_____

Date

Chairperson _____     Case Manager _____

Date _____             Date _____

Summary Reentry Plan - Progress Report                    Page 4 of 4

## Specializing in Oncology, Hematology & Coagulation

| | | | | |
|---|---|---|---|---|
| Vasia Ahmed, MD | Rasheed Akhtar, MD | Baseem Chaar, MD | Rami Haddad, MD | F|708-671-9283 |
| Amar Hamad, MD | Shadi Hamdan, MD | Mufaddal Hamzedeh, MD | Sarah Jeong, MD | F|708-671-0897 |
| Monhammed Kelta, MD | Vasantha Kumaraiah, MD | Shadi Latta, MD | Mahmoud Mahafzah, MD | F|708-745-9950 |
| Ronald Myint, MD | Rand Naffouje, MD | Ymus Normanbhoy, MD | Mauna B. Pandya, MD | F|708-960-2907 |
| Jayanthi Ramadurai, MD | Suby Rao, MD | Shaina Rozell, MD | Wasif Shirazi, MD | |
| Ghassan Zalzaleh, MD | Jennifer Bednarz, FNP-C | Monika Benner, FNP-C | Cynthia Czaba, PA-C | |
| Cara McGuire, FNP-BC/C | Amanda Kelsey-Jedrzejak, NP-BC | Angela Patrick, FNP-BC | Matthew Toman, FNP-C | |

10604 Southwest Highway, #200, Chicago Ridge, IL 60415    P|708-424-9710
10604 Southwest Highway, #109, Chicago Ridge, IL 60415    P|708-745-9985
12150 South Harlem Ave., Palos Heights, IL 60463    P|708-342-1900
17850 South Kedzie Ave., #1500, Hazel Crest, IL 60429    P|708-400-7932
19060 Everett Blvd., #112, Mokena, IL 60448    P|708-478-4302

F|708-478-4303

ATTENTION: This report may contain Protected Health Information as defined by HIPAA and should be managed in accordance with your organization's policies for Protected Health Information.

Patient: Parker, Sidney, Jr
MRN: A219886

Location Name: Chicago Ridge
Location Address: 10604 Southwest Highway, Suite 200,
Chicago Ridge IL - 60415
Location Phone: 708-424-9710

DOB: 02/06/1947
Sex: Male

Allergies:                                              codeine, Pravachol

Imaging

Order: CT chest/abdomen/pelvis w/ contrast                Order Date: 04/18/2022
To Be Performed: Next Available                          Perform Location:
Associated Problem(s): Malignant neoplasm of upper lobe of lung (disorder) * (C34.12)
Order Instructions:
at Little company.

tx of metastatic breast cancer to brain in remission, recent pneumothorax, monitor for recurrence

708-499-8550

Electronically signed by Ronald Myint( 100307679S ) on 04/18/2022 11:59 CDT

*Ronald Myint*

Your personalized instructions can be found at the end of this document.



## Today's Visit

You saw
on Wed
for:

- Phys
- Follo




## Your medications have changed today

See your updated medication list for details.

## These medications are not ready yet

We are checking if your insurance will help pay for these medications. We will let you know when they are ready. If you don't hear back within 3 business days, please contact us.

Memantine HCl

The following iss

- Annual visit fc examination v

- Secondary ma brain and spir unspecified s

- Protein-calori unspecified s

## Referrals made today

PULMONARY EVAL & TREAT (DMG) (Christopher Ochoa, MD)
Address: 330 N MADISON ST SUITE 103 JOLIET IL 60435
Phone: 630-871-6699
Specialty: Pulmonary Diseases
For: Chronic obstructive pulmonary disease, unspecified COPD type
Multiple visits requested (expires 4/27/2023)

NEUROLOGY EVAL & TREAT (DMG) (Joseph Mayer, MD)
Address: 2320 HIGH ST BLUE ISLAND IL 60406
Phone: 708-388-5500
Specialty: Neurology
For: Dementia without behavioral disturbance, unspecified dementia type
Multiple visits requested (expires 4/27/2023)

- Hypertension diabetes mell

- Chronic obst disease, unsp

- Special scree neoplasms, c

- Encounter fc neoplasm of

- Abnormal w

- Dementia w disturbance



## Labs ordered today

CBC WITH DIFFERENTIAL WITH PLATELET
Please complete by or around 4/27/2022

COMP METABOLIC PANEL (14)
Please complete by or around 4/27/2022



Blood
Press
132/



Weig
119

Temp
97

May 18, 2022

Re: Sidney Upchurch

Dear Judge John Robert Blakey,

I am writing to express support for compassion release of my brother Sidney Upchurch #
17103424, as he comes before you Judge Blakey. Our father has Dementia and has severely
declined in the last year. My father has several health issues that are: lung cancer that expanded
to the brain diagnosis May of 2016, that December of 2016 part of the cancer traveled to his
brain which resulted in brain surgery. He has had rounds of chemotherapy and radiation. He has
clubbing of his fingers in the left hand and paralysis of the left arm. We constantly inquired
about his cognitive function, but the cancer took priority. I have attached medical forms
indicating his diagnosis. Now the cancer is in remission, but the Dementia is in advance stages,
and he has no short-term memory. He has also suffered a collapsed lung which required a chest
tube. There are days he doesn't eat, and he currently weighs 117 lbs. at 6 ft tall. When my
brother phones his eyes light up every time he hears Sidney's voice. Sidney can even calm him
down and get him to eat when I cannot get him to even drink ensure. My dad loves all his
children very much, but he and Sidney have a special bond.

The next appointment with the oncologist should have latest chest/abdominal scan as well as
head CT-scan to question if COPD is yet another ailment. His refusal to eat and his difficult
behavior due to dementia has taken a toll on me. I am taking care of both my mother and father,
and it is at the point I can no longer do this alone. I must go see about my mother who is
currently hospitalized and is in and out the hospital. The numerous hospitals and lengthy stays
interfere with me taking care of my dad which is why I need my brother home to assist me at this
very critical time. Dementia is a very debilitating disease, and it interferes with daily
functioning. Dementia is the loss of cognitive functioning – thinking, remembering, and
reasoning. Medications may help manage symptoms, but the disease is irreversible.

Although Sidney made some mistakes in the past, he is a changed man who will be a productive
and law-abiding citizen upon release. Examples of this include.

-       Sidney has strong feelings of remorse and responsibility for his crime. I believe he has
seen how destructive his behaviors became, and I am convinced he is in a much better place
emotionally.

-       Sidney has become a mentor while incarcerated

-       Sidney has found and is in constant contact with mentors, making plans to secure work and
become an entrepreneur

-       I believe that fire has been re-ignited in him and he is committed to taking full advantage
of his second chance at a normal life

Re: Sidney Upchurch

Dear Judge,

I am writing this letter of support for my father Sidney Upchurch (ID #17103424). I am his son Sidney "Scooter" Upchurch Jr. and I am proud to be his son. I am a father of one beautiful intelligent child. My father has made mistakes in his past, he is very remorseful and is a different man now. As a young man, I long for guidance from my father. I am a good man and a decent human being. Both of parents are responsible for instilling morals and values for me to live by.

My father has been incarcerated for 18 years and he has put in the work to better himself. He has sought and committed to counseling. My father has become a leader among his peers. I hear the excitement in his voice when he speaks about fellow inmates seeking advice and being a mentor. I need my father in my life as a mentor and a friend.

I would like for you to consider releasing him due to the high amount of people that are being infected inside of the prison system. I know there are many inmates that are infected and have infected other inmates.

I know that this is a big favor to ask, but it has been so many years that I have not been able to see and hug my dad. He has missed a lot in my life that I wish he could have been a part of.

I know your time to read this is short and I want to thank you for letting me express how I feel about my dad.

Thank you,


Sidney Upchurch Jr.

May 21, 2022

Good Morning Judge Blakey,

I am writing this letter to you in hopes that you will allow me a few moments of your time during your hectic schedule.

I am Wilnessa Mims, and I am the sister of inmate Sidney Upchurch (ID #17103424) who has been in custody for 18 years. Sidney is my older brother out of three children by my mother. He was always and still is my big brother, who I look up to no matter what. He has always been and even more so now a strong support for me and my three boys.

Sidney has helped me deal with the recent loss of our other brother, Jerry Upchurch, by calling and checking on us daily. He always makes it a point to contact me to see how the boys and I are doing, especially now since I have experienced the loss of my middle son's father and our brother within months of each other.

I have been to a place in my mind after these deaths that had scared me and Sidney helped me to put things in prospective when I thought I was going to give up. I know this is not what you expect to hear, but I feel as though I need to be completely honest as to why I have chosen to contact you on his behalf.

While life has been challenging for many people, my family has tried to stay strong and get through it as best as possible. My brother has had COVID twice since his incarceration. However, I still cannot help but think about the reality of losing another family member at this time due to the virus.

My brother's family support while incarcerated has been super supportive and I think this is a major factor in his positive attitude and his growth. He has become a role model to other inmates and to his family. This is an important piece of who my brother has become, and I am so proud of him and love him very much.

My mother who is 72 years old, has been a huge support for me by helping with the boys and helping me to run my businesses. However, her age has begun to be a huge factor in her inability to help with multiple facets of the businesses.

I only have one brother left and it would be a great to have Sidney home to help me with raising my boys as well as the operations of my businesses. I am totally prepared to support him financially and to have employment for him if he can be released.

I appreciate the time that you have taken to read my letter and I appreciate your time in reviewing this matter.

Best regards,


Wilnessa Mims

I am proud to say that Sidney will be well-supported upon release from prison. If he receives parole during this process, here is the plan we have discussed to help him successfully re-enter society.

- Employment – Aunt Ruta and husband John McClendon owners of McClendon Trucking Company will hire and train Sidney. Also, his sister Wilnessa Mims owns several companies which require assistance and she will provide employment if needed for Sidney.

- Residence – Sidney will live in the family building where his first cousin resides. She lives on the second floor, he will occupy the 1st floor at 1304 w. 77th Street, Chicago, Illinois 60620.

- Transportation – Sidney's sister owns two cars and will provide one for her brother to get back and forth to employment.

- Support System – Sidney's Pastor Albert Saulsbery will be one of his support and Tahitia Martin his Fiancé will also be a major support. Sidney's sister Wilnessa Mims will also be a part of hi support team.

- Clothing – Although his clothes remain in a family storage area from 18 years ago, we all will provide Sidney with clothes and coats and whatever he needs once home.

I have a daughter in college, and I need to get a job and help her pay tuition, if my brother was here to assist with my father, I would be able to work a part-time job to help my daughter. I just need help, as you know taking care of two severely ill parents can become stressful.

In closing, Sidney is not a threat to society, he is remorseful for his prior actions, he doesn't appear to be the same person that he was when he committed his crimes, and he appears to be passionate about his family, working hard and supporting his father during this diagnosis of Dementia and all the other ailments. Since all his requirements have been met, as he goes before you. The only thing that would be up for review is his behavior and from speaking with my brother and reading all the support letters from counselors, psychology technicians, and safety specialist my brother has become a model inmate. Sidney has served his debt to society, and he deserves the opportunity to work, support his family and his ailing father. He has served more than adequate time for his crimes; therefore, we pray this that you find it is time to restore Sidney Upchurch back to his family and to his community.

Please feel free to contact me at 773-216-2068 if you have any questions. Thank you for your consideration.

Sincere


Kimberly Parker

May 20, 2022

Re: Sidney UpChurch #

Honorable Judge John Robert Blakey

U.S. Federal Court

Dear Honorable Judge John Robert Blakey,

I am writing this compassion release letter on behalf of my son Sidney Upchurch ID #17103424 with a heavy heart and in hopes that you will allow me the opportunity to provide you with insight about my son.

Sidney is not my only living son and the oldest. My son has served 18 years of his life due to crimes that were committed in which he was a willing participant that negatively affected the lives of others, and I believe he should be released to care for his ailing father and reunite with his family. I have written several letters in support of Sidney's release but not one has been more urgent than this support letter. Sidney's father has deteriorated over the last few years and his is only 117 lbs. at 6 ft tall.

He has long acknowledged that his decisions during that time in his life has resulted in his current status. He has also acknowledged how his actions has costed him many years of not being with his family.

During Sidney's incarceration, he has lost several immediate family members which include his loving grandmother and my mother Maggie Upchurch; two uncles who were my brothers, James, and Terry Upchurch; and his younger brother and my youngest son, Jerry Upchurch who died unexpectedly. He also lost his former brother-in-law who died of Covid-19 in March.

Sidney also did not have the opportunity to welcome any of his five grandchildren during their births and has only met two of them to date due to the distance of the facilities in which he has been housed.

As a mother, it was extremely painful and heartbreaking to have to bury my other son and it is something that I have been trying to mentally deal with every day of my life. There isn't a day that I don't think about my children, especially during the times in which we are currently living in.

He has always been the family member that everyone went to with their problems in which he did whatever he could to help them. He was the first person to call me every morning just to check on me and make sure that I was okay. He was the son that would go out of his way to make sure that I had whatever I needed.

During his incarceration, his sister has been raising three boys in which he has been a strong secondary father figure. However, due to his two older nephews losing their father, he has taken on the responsibilities of being there for them as best he can by phone.

He calls and talks to them often to make sure they know that they have him in their lives and to help them adjust to life without their fathers. He has willingly taken on this without hesitation because this is who Sidney really is as a person.

Sidney has made mistakes that caused him to be in the situation that he is currently in; however, he is the most caring and loving person who is family oriented.

My daughter and I currently have several businesses which include a medical car transportation service and two daycare centers. I know that Sidney would put forth the efforts to help us maintain the businesses and allow us to have some stress relief in doing so.

I am older now and it is becoming harder for me to assist my daughter with the businesses as well as to help her care for her son, who has been diagnosed with autism and require constant monitoring and care. I travel to and from her home to assist with caring for her three boys since the pandemic and I try to help fulfill our business obligations as much as I can while doing so. These responsibilities are quite challenging to deal with especially at my age.

I would like to thank you for reading my letter and pray that you will take all this information into consideration when evaluating my son for release.


Sincerely,


Janice Upchurch-Mims

May 19, 2022

Re: **Sidney Upchurch #17103424**

Dear Judge John Robert Blakey,

I am writing this letter of support for Mr. Sidney Upchurch whom I consider a very good friend. I have known him and his family over 25 years. Mr. Upchurch has learned from this experience and will continue to exhibit and practice this changed behavior upon release. We have all made bad decisions in our life, I know I have, and the best part is that I learned from it. This situation has changed Mr. Upchurch and made him grow closer to God. A mistake cannot be undone but after rethinking your actions going through the stages of feeling ashamed you realize that life goes on and better days are ahead. Mr. Upchurch has learned compassion, how to set boundaries in his life and not cross them. Mr. Upchurch has grown in the area of loving himself and others. He Mr. Upchurch now recognizes and has great respect for the restrictions of human nature and is kind, accepting and forgiving. Mr. Upchurch has served 18 years of his sentence. He is a model inmate and has become a peace maker among his peers.

I write to encourage Mr. Upchurch and find him to be very understanding during all the different factors beyond his control. I constantly remind him that we are all only human and that all people have both strengths and weaknesses. I encourage him to concentrate on his strengths and always acknowledge the weaknesses.

I offer my unconditional support, love, and acceptance to Mr. Upchurch. He has a solid support system through his family, and they are taking the necessary steps to gather support to aid in his release from prison. I will do everything I can to support his continued growth, mentorship and assistance getting to a job, and keeping a job. He has a family and a circle of support that will help him to be successful when he comes home. I encourage Mr. Upchurch to be kinder and patient to himself as he begins to transition home.

In closing, I would like to reiterate that I believe Sidney Upchurch is a changed man who is ready for the opportunity of freedom again. His commitment to personal transformation is evident to me and his family. Our prayer is that you can see the positive changes he has made through his leadership and behavior throughout his incarceration.

Please feel free to contact me at Tahitia.martin@comcast.net or 708-941-5511 if you have any questions. Thank you for taking the time to review this letter.

Sincerely,

Tahitia Martin

May 15, 2022

The Honorable Judge John Robert Blakey

Dear Judge Blakey,

My name is Marvin Upchurch and I am the uncle of Sidney Upchurch. Sidney is more than a number.  He is a father, a son, a grandfather, and he is loved by his family.  He is smart and funny with a big heart and he can learn from his mistakes.   I have seen him mature and grow during this difficult time.

He has a support system, a mother that loves him and a family looking forward to his return to society. We will surround him with support, friendship, guidance, and love to help him transition back to becoming a productive member of his community.  We pray that you will consider his release and want you to realize that he is not in this alone.

Thank you for the consideration and we assure you that we will be with him every step of the way.


Sincerely,

Marvin Upchurch
SSG.USA (ret.)

May 21, 2022

Attention: Honorable Judge John Robert Blakey

My name is Ruta McClendon, and I am writing this letter of support for my nephew Sidney Upchurch (ID #17103424). Upon his release from incarceration my intent is to hire him so that he satisfies his requirement for employment. I am an employer in the Healthcare field who has over 20 years of managerial experience and have employed a high volume of diverse individuals during my tenure. I have had the opportunity to work with so many people who have been able to advance in their careers in various fields. I am not a stranger to hiring individuals with criminal backgrounds and it has enhanced my passion as well when I am able to help someone change their path in life. I have hired known felons who had criminal backgrounds ranging from drugs to murder and it has not been a surprise when I find individuals who have these types of backgrounds applying for positions.

I support and advocate for "second chances" and empowering people to change their past by providing employment and mentoring. This is easily achievable when someone is willing to put forth the effort in helping those who normally will not even be considered in the average work environment. As you are aware, there are limited opportunities for convicted felons, and with that being said, it is primarily an easy path in the wrong direction that many take due to these concerns. However, I personally believe that the more someone shows that they are willing to trust and that they believe in you, the more that a person is unlikely to resort to their past.

Therefore, I have made the commitment to hire my nephew Mr. Sidney Upchurch upon his release. I am willing to give him that "second chance" that so many convicted felons deserve. I am willing to hire and monitor his progress back into society without hesitation and I truly believe that he can do so with the proper resources that I can provide.

I am reaching out to you directly as a way for you to see that Mr. Upchurch will have a meaningful way of supporting himself and his family when he is released. I would like to thank you for your time and consideration.

Respectfully,

Ruta McClendon

May 20, 2022

Re: Sidney UpChurch #

Honorable Judge John Robert Blakey

U.S. Federal Court

Dear Honorable Judge John Robert Blakey,

I am writing this compassion release letter on behalf of my son Sidney Upchurch ID #17103424 with a heavy heart and in hopes that you will allow me the opportunity to provide you with insight about my son.

Sidney is not my only living son and the oldest. My son has served 18 years of his life due to crimes that were committed in which he was a willing participant that negatively affected the lives of others, and I believe he should be released to care for his ailing father and reunite with his family. I have written several letters in support of Sidney's release but not one has been more urgent than this support letter. Sidney's father has deteriorated over the last few years and his is only 117 lbs. at 6 ft tall.

He has long acknowledged that his decisions during that time in his life has resulted in his current status. He has also acknowledged how his actions has costed him many years of not being with his family.

During Sidney's incarceration, he has lost several immediate family members which include his loving grandmother and my mother Maggie Upchurch; two uncles who were my brothers, James, and Terry Upchurch; and his younger brother and my youngest son, Jerry Upchurch who died unexpectedly. He also lost his former brother-in-law who died of Covid-19 in March.

Sidney also did not have the opportunity to welcome any of his five grandchildren during their births and has only met two of them to date due to the distance of the facilities in which he has been housed.

As a mother, it was extremely painful and heartbreaking to have to bury my other son and it is something that I have been trying to mentally deal with every day of my life. There isn't a day that I don't think about my children, especially during the times in which we are currently living in.

He has always been the family member that everyone went to with their problems in which he did whatever he could to help them. He was the first person to call me every morning just to check on me and make sure that I was okay. He was the son that would go out of his way to make sure that I had whatever I needed.

During his incarceration, his sister has been raising three boys in which he has been a strong secondary father figure. However, due to his two older nephews losing their father, he has taken on the responsibilities of being there for them as best he can by phone.

He calls and talks to them often to make sure they know that they have him in their lives and to help them adjust to life without their fathers. He has willingly taken on this without hesitation because this is who Sidney really is as a person.

Sidney has made mistakes that caused him to be in the situation that he is currently in; however, he is the most caring and loving person who is family oriented.

My daughter and I currently have several businesses which include a medical car transportation service and two daycare centers. I know that Sidney would put forth the efforts to help us maintain the businesses and allow us to have some stress relief in doing so.

I am older now and it is becoming harder for me to assist my daughter with the businesses as well as to help her care for her son, who has been diagnosed with autism and require constant monitoring and care. I travel to and from her home to assist with caring for her three boys since the pandemic and I try to help fulfill our business obligations as much as I can while doing so. These responsibilities are quite challenging to deal with especially at my age.

I would like to thank you for reading my letter and pray that you will take all this information into consideration when evaluating my son for release.


Sincerely,


Janice Upchurch-Mims

May 21, 2022

Good Morning Judge Blakey,

I am writing this letter to you in hopes that you will allow me a few moments of your time during your hectic schedule.

I am Wilnessa Mims, and I am the sister of inmate Sidney Upchurch (ID #17103424) who has been in custody for 18 years. Sidney is my older brother out of three children by my mother. He was always and still is my big brother, who I look up to no matter what. He has always been and even more so now a strong support for me and my three boys.

Sidney has helped me deal with the recent loss of our other brother, Jerry Upchurch, by calling and checking on us daily. He always makes it a point to contact me to see how the boys and I are doing, especially now since I have experienced the loss of my middle son's father and our brother within months of each other.

I have been to a place in my mind after these deaths that had scared me and Sidney helped me to put things in prospective when I thought I was going to give up. I know this is not what you expect to hear, but I feel as though I need to be completely honest as to why I have chosen to contact you on his behalf.

While life has been challenging for many people, my family has tried to stay strong and get through it as best as possible. My brother has had COVID twice since his incarceration. However, I still cannot help but think about the reality of losing another family member at this time due to the virus.

My brother's family support while incarcerated has been super supportive and I think this is a major factor in his positive attitude and his growth. He has become a role model to other inmates and to his family. This is an important piece of who my brother has become, and I am so proud of him and love him very much.

My mother who is 72 years old, has been a huge support for me by helping with the boys and helping me to run my businesses. However, her age has begun to be a huge factor in her inability to help with multiple facets of the businesses.

I only have one brother left and it would be a great to have Sidney home to help me with raising my boys as well as the operations of my businesses. I am totally prepared to support him financially and to have employment for him if he can be released.

I appreciate the time that you have taken to read my letter and I appreciate your time in reviewing this matter.

Best regards,


Wilnessa Mims